## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTIAN ECKMAN,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-4038-KSM** |
| **ENCOMPASS HOME AND AUTO INSURANCE CO.,** | |
| Defendant. | |

## MEMORANDUM

**MARSTON, J.**                                                                                           **July 30, 2021**

Presently before the Court is Plaintiff Christian Eckman's Motion to Preclude the Pennsylvania State Supplements as Admissible Duplicates in Lieu of the Original Documents. (Doc. No. 17.)  Eckman, individually and as executor of his deceased wife's estate, asserts a claim for a declaratory judgment against his insurer, Defendant Encompass Home and Auto Insurance Company ("Encompass").  (Doc. No. 1-1.)  Eckman's claim stems from injuries sustained in a February 16, 2019 automobile accident that tragically resulted in the death of his wife, Deanna Marie Eckman.  (*Id.* at ¶¶ 12–18.)  Eckman seeks a declaratory judgment that he is entitled to receive underinsured motorists coverage ("UIM") in an amount equal to the bodily injury coverage benefits he received under his policy.  (*Id.* at ¶ 70.)

In Pennsylvania, basic UIM coverage is for an amount equal to the policy's bodily injury limits.  75 Pa. Cons. Stat. § 1731.  However, pursuant to section 1734 of Pennsylvania's Motor Vehicle Financial Responsibility Law (the "MVFRL"), an insured may request "in writing" a lower amount of UIM coverage.  *Id.* § 1734.  To effectuate such a request, insurance companies

1

use the Pennsylvania Auto Supplements (the "PA Supplements"), which includes the Section

1791 Important Notice and uninsured motorists ("UM")/UIM coverage selection/rejection

forms.[1]  Encompass uses the following three PA Supplements:  a four-page Important Notice,

ACORD 61 PA Form; an UM coverage selection/rejection, ACORD 60 PA Form; and an UIM

coverage selection/rejection, ACORD 62 PA Form.  (Doc. Nos. 18-8, 18-9, & 18-13,

respectively.)  The UM/UIM coverage selection/rejection forms are sometimes referred to as

"sign-down forms" in the Pennsylvania insurance industry.  (*See* Doc. No. 1-1 at p. 280.)

During discovery in this case, Encompass produced copies of the Section 1791 Important

Notice, an UM sign-down form, and a UIM sign-down, all of which Eckman had signed and

executed in June 2013 when he first applied for his insurance policy.  (Doc. Nos. 18-8, 18-9, &

18-13.)  In his motion to preclude, Eckman argues that these forms should be precluded from

evidence, because they are duplicates and not original documents.  (Doc. No. 17 at ¶ 55.)  For the

reasons that follow, the Court denies Eckman's motion to preclude.

## I.    *Procedural History*

On February 21, 2019, Eckman's counsel requested that Encompass provide it with any

PA Supplements that Eckman had executed.  (Doc. No. 17-1 at p. 3.)  On February 26, 2019,

Encompass sent Eckman's counsel a certified copy of Eckman's insurance policy, but did not

provide the UM/UIM sign-down forms.  (Doc. No. 17 at ¶ 2.  *See generally* Doc. No. 17-10, Ex.

P-1.)

---

[1] Section 1791 of the MVFRL gives the language that must be included in the Section 1791 Important Notice; if this form is provided to an insured, the insured is presumed to have been advised of the coverage benefits and limits available to him under the MVFRL.  75 Pa. Cons. Stat. § 1791.  The UM/UIM coverage selection/rejection forms explain the scope of UM/UIM coverage, inform the insured that he may receive such coverage up to his bodily injury coverage limits, and provide the insured the option of rejecting such coverage or opting to receive it at an amount lower than his bodily injury coverage limits.  (*See* Doc. Nos. 18-9 & 18-13.)

Shortly thereafter, on August 8, 2019, Eckman filed this declaratory action in state court (Doc. No. 1-1), and Encompass removed the matter to this Court on August 30, 2019 (Doc. No. 1).[2]

On November 22, 2019, during discovery, Encompass produced copies of the Section 1791 Important Notice and UM sign-down form that Eckman had executed.  (Doc. Nos. 18-8 & 18-9.)  Then, on December 4, 2019, during the deposition of Encompass's corporate designee, William van Duys, van Duys located and produced the executed copy of Eckman's UIM sign-down form.  (Doc. No. 18-13; van Duys Dep. Tr. at 42:22–43:20.)

At that point, because Eckman had only received duplicates of these PA Supplements— and not the original documents themselves—Eckman sent Encompass a notice of intent to inspect original documents.  (Doc. No. 17-11 at p. 2.)  On December 6, 2019, after being informed that Encompass's search for the original documents could take some time, Eckman filed a motion to compel.  (Doc. No. 14.)  Encompass opposed the motion.  (Doc. No. 15.)  On December 9, 2019, the Court granted Eckman's motion to compel and directed Encompass to "produce for plaintiff's attorney's inspection the original signed application and Pennsylvania State Supplements, or explain why it cannot do so."  (Doc. No. 16.)

Ten days later, Encompass sent a letter to Eckman's counsel explaining that neither Eckman's insurance agent nor his agency "possess[ed] original copies of the documents signed by [Eckman] as part of his insurance application," and that "a search of [Encompass's] warehouse ha[d] failed to yield the original signed documents."  (Doc. No. 18-12 at pp. 2–3.)  Eckman then filed the instant motion to preclude.  (Doc. No. 17.)  Eckman argues that the

---

[2] This case was originally assigned to the Honorable Timothy J. Savage.  The matter was reassigned to the Honorable Karen Spencer Marston on February 26, 2020.  (Doc. No. 23.)

duplicates are inadmissible.  (*Id.* at ¶ 55.)  In particular, Eckman asserts that the UIM sign-down

form that van Duys provided during his deposition is inadmissible, because there are "serious

questions as to the document's trustworthiness" such that it would be "unfair to admit the non-

original document as evidence in lieu of the original."  (*Id.* at ¶ 49.)  Encompass opposes

Eckman's motion and argues that there is no evidence that the duplicates of the PA Supplements

are inauthentic; rather, the evidence demonstrates the documents are authentic.  (Doc. No. 18 at

pp. 13–14.)

The Court held oral argument on Eckman's motion to preclude and the parties' cross-

motions for summary judgment on June 22, 2021.  For the motion to preclude, Eckman testified

on his own behalf and van Duys testified for Encompass.

## II.    *Factual Background*

As noted above, in February 2019, Encompass produced a certified copy of Eckman's

insurance policy, including his application.  (*See* Doc. No. 17-10, Ex. P-1.)  However, it did not

include any PA Supplements.  (*See generally id.*)  On November 22, 2019, approximately eleven

months after Eckman's initial request for any PA Supplements signed by Eckman, Encompass

produced copies of Eckman's Section 1791 Important Notice and UM sign-down form.  (Doc.

Nos. 18-8, 18-9; *see* Doc. No. 17 at ¶ 14.)

On December 4, 2019, Eckman deposed Encompass's corporate representative, William

van Duys and questioned him about Eckman's application and the PA supplements  (Doc. No. 17

at ¶ 16; *see generally* van Duys Dep. Tr. at 29:7–34:6)  Initially, van Duys agreed that

Encompass had provided all of the paperwork in its possession related to Eckman.  (*Id.* at 10:8–

11:13.)  van Duys testified that he was not involved in gathering the documents that were

produced to Eckman in February 2019, but he was involved in the November 2019 search for

4

Eckman's PA Supplements.[3]  (*See* van Duys Dep. Tr. at 8:19–9:6.)  van Duys explained that he previously worked for Allstate and based on that experience knew that Pennsylvania insurance agents sent application documents to the insurance company to be scanned and saved to a central database.  (*Id.* at 8:23–10:7.)  He testified that he found Eckman's PA Supplements on this database.  (*Id.* at 9:12–16.)

During the deposition van Duys was shown a copy of the executed UM sign-down form, which was produced in November 2019, along with a blank copy of an UIM sign-down form. (*Id.* at 33:2–37:21, 41:1–42:2.)  He then requested a break.  (*Id.* at 42:5–6.)  After the break, van Duys said: "When I reviewed the forms in the depository, there were multiple inputs in there.  I thought they were all uninsured forms.  There might be an underinsured form in that depository. I need to double check that.  I do have my computer.  If you can give me the Wi-Fi password, I can check it."  (*Id.* at 42:12–17.)  He then logged onto database and found a copy of Eckman's executed UIM sign-down form.  (*Id.* at 42:22–43:20.)  van Duys searched the database in the presence of Eckman's counsel, and immediately produced a copy of the UIM sign-down form to counsel.  (*See id.* at 42:22; *see also* Hr'g Tr. at 22:6–8.)

When asked why he had not previously produced the UIM sign-down form, van Duys explained that he had seen multiple sign-down forms on the database during his initial search and he had mistakenly believed they were duplicates.  (van Duys Dep. Tr. at 43:3–20 (explaining that he mistakenly believed that the UM and UIM sign-down forms were part of the same document, which he had provided in November).)  van Duys stated that he is most familiar with Illinois

---

[3] At the hearing on the parties' motion, van Duys testified that after he received the notice of deposition he reviewed the case and "out of force of habit, I looked at the repository that we have. . . . and I found the particular signed forms that the agency sent in."  (Hr'g Tr. at 19:12–22.)

insurance forms, where the UM and UIM sign-down forms are part of the same document, and he had wrongly assumed Pennsylvania's forms were the same.  (*Id.* at 43:13–20.)

During Eckman's deposition on December 11, 2019, counsel showed him copies of the PA Supplements, including the UIM sign-down form, and Eckman testified that the signatures did not look like how he signs his name.[4]  (Eckman Dep. Tr. at 32:1–12; *id.* at 33:7–18.)  He stated that his signature is usually more legible than how it appears on these documents.  (*See id.*; *id.* at 33:16–18; *see also id.* at 23:13–19.)  Eckman did not recognize the PA Supplements (*id.* at 32:13–16; *id.* at 33:19–21) and only remembered signing a few documents the day he signed his insurance application.  (Hr'g Tr. at 8:10–15.)  However, Eckman never affirmatively said that he did not sign the documents, and he admitted he had no reason to believe anyone forged his signature.  (Eckman Dep. Tr. at 29:21–30:6.)

Subsequently, in response to Eckman's request that it produce Eckman's original PA Supplements, Encompass unsuccessfully searched for the documents.  (Doc. No. 18-12 at pp. 2–3.)  Encompass contacted Eckman's insurance agent, Donald Blizzard, and the agency Blizzard worked for in 2013, P&I insurance Services, LLC, and neither possessed Eckman's original PA Supplements.  (*Id.*)  A search of Encompass's Connecticut warehouse was also unsuccessful.  (*Id.*)

Both van Duys and Eckman were called as witnesses during the hearing on the motion to preclude and testified consistent with their previous deposition testimony.[5]

---

[4] Also, Eckman was shown his insurance application and claimed that his signature on this document "does not look like his typical signature."  (Eckman Dep. Tr. at 23:13-20.)  However, Eckman asserts that he signed the application in his verified complaint.  (Doc. No. 1-1 at ¶ 31.)

[5] During the hearing, van Duys also clarified that he became involved in the case just before his deposition, and that the people in the Encompass claims department, who would have assisted in document production, most likely would not know to look in the Allstate database for the PA Supplements.  (Hr'g Tr. at 24:12–20, 26:4–15, 29:2–30:21.)

### III.    Discussion

Eckman argues that this Court should preclude Encompass from relying on copies of the PA Supplements.  (Doc. No. 17 at ¶ 55.)  Citing to Federal Rule of Evidence 1003, Eckman argues that there is "a genuine concern about the authenticity or the circumstance that would make it unfair to allow the admission [of] the duplicate" PA Supplements.  (*Id.* at ¶¶ 44, 55.)  As to the UIM sign-down form, Eckman contends that van Duys's explanation for finding this form is not credible—given that he found it in the middle of his deposition and eleven months after Eckman's counsel first requested the production of PA Supplements.  (*Id.* at ¶¶ 48–49.)  To support his argument that van Duys's explanation is not credible, Eckman points out that—on two separate occasions—Encompass had previously produced what it stated were *all* documents related to Eckman's insurance application, and neither production included any PA Supplements.  (Doc. No. 14 at ¶¶ 5, 12, 15, 23–24.)  Furthermore, Eckman argues that Encompass has no credible explanation for why it cannot find the original PA Supplements.  (Doc. No. 17 at ¶ 48.)  In sum, Eckman believes that the circumstances surrounding the late production, coupled with his own testimony that the signatures on the forms do not match his own signature and that he does not recognize the PA Supplements, are sufficient to "indicate a lack of trustworthiness."  (*Id.* at ¶ 50.)

Encompass, on the other hand, argues the circumstances surrounding the discovery of the sign-down forms do not indicate a "lack of trustworthiness," and these documents should be admitted as evidence.  (*E.g.*, Doc. No. 18-1 at p. 13.)  Encompass asserts that van Duys's explanation regarding the late production of the forms is credible.  (*Id.* at pp. 6–7.)  The company also contends that Eckman's testimony that the signatures do not look like his own signature and that he does not recognize these documents fails to support any allegation of forgery.  (*Id.* at pp.

9–12.)  Encompass argues that because the original PA Supplements cannot be found, they are

deemed lost, and therefore, Federal Rule of Evidence 1004 applies.  (*Id.* at p. 5.)  Encompass

asserts that because there is no evidence that the originals were lost or destroyed in bad faith, the

duplicates obtained from Encompass's database are admissible.  (*Id.*)

The Court addresses each argument in turn.

> ### A.    Fed. R. Evid. 1003

Federal Rule of Evidence 1003 states that "[a] duplicate is admissible to the same extent

as the original unless a genuine question is raised about the original's authenticity or the

circumstances make it unfair to admit the duplicate."

Here, the Court does not find that the circumstances surrounding Encompass's production

of the PA Supplements indicate "a lack of trustworthiness" sufficient to preclude these

documents pursuant to Rule 1003.  First, van Duys testified that he was not the person who

gathered the documents that were initially produced to Eckman in February 2019, and that that

person would not have known to look in the database where van Duys ultimately found the PA

Supplements.  (Hr'g Tr. at 26:4–15, 29:9–13, 30:8–21.)  The Court finds van Duys's testimony

credible.  The Court also finds van Duys's testimony that he initially—and mistakenly—assumed

that the UIM sign-down form was a duplicate of the UM sign-down form credible.  (*See* van

Duys Dep. Tr. at 43:3–18.)  Although van Duys was careless in his search, the Court finds that

his mistake is understandable given his explanation that he assumed Pennsylvania forms were

the same as Illinois forms, where the UM and UIM sign-down forms both appear on a single

page.[6]  (*See id.* at 6:15–22, 43:3–20.)

---

[6] Because the Court finds that the document is trustworthy, we do not address Eckman's contention that
because the document is untrustworthy, it cannot be admissible under Federal Rule of Evidence 803(6).
(*See* Doc. No. 17 at ¶ 50.)

Moreover, Eckman fails to show that the PA Supplements are inauthentic. Federal Rule of Evidence 901(a) governs authenticity. The Third Circuit has held that "[t]he burden of proof for authentication [under Rule 901(a)] is slight." *United States v. Pasley*, 629 F. App'x 378, 381 (3d Cir. 2015) (quoting *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994)). Moreover, "simple absence of the original," without more, is not enough to show that a document is inauthentic. *Steele v. Pelmor Labs., Inc.*, Civil Action No. 16-cv-3088, 2017 WL 5515919, at *4 (E.D. Pa. Apr. 18, 2017), *aff'd*, 725 F. App'x 176 (3d Cir. 2018).

Here, all of the PA Supplements (the Section 1791 Important Notice and the UM sign-down produced in November 2019, and the UIM sign-down form produced during van Duys's deposition) contain the same facsimile signature line at the top of each page. The fax line includes the date ("Jun 18 13"), time, fax name (Donald Blizzard), fax number ("4844727489"), and fax page number. (*Compare* Doc. No. 18-13 at p. 2, *with* Doc. No. 18-8 at pp. 2–6, *and* Doc. No. 18-9 at p. 2.) Courts have found that fax lines are sufficient evidence to authenticate a document. *See Berger v. Zeghibe*, 465 F. App'x 174, 184 (3d Cir. 2012) (affirming the district court's admission of faxes based in part on the fax header); *United Nat'l Ins. Co. v. Aon Ltd.*, Civ. No. 04-539, 2008 WL 4589741, at *2 (E.D. Pa. Oct. 15, 2008) (admitting a fax in part based on its "distinctive markings"); *see also United States v. CVS Caremark Corp.*, Civil Action No. 09-4672, 2015 WL 5582553, at *32 n.24 (E.D. Pa. Sept. 22, 2015) (finding that, based on evidence such as "the email addresses in the headers, explanations in the body of the emails, conduct after receiving the emails, and other circumstantial evidence," an email was "properly authenticated for purposes of summary judgment").

The page numbering and time stamps of these documents corroborate van Duys's testimony as to how the documents came to be stored on Encompass's database.[7]  Further, the original certified copy of Eckman's insurance policy (produced by Encompass in February 2019), includes pages 1 and 2 of this same fax.[8]  (Doc. No. 1-1 at pp. 273–74.)  The Court finds this supports Encompass's assertion that these documents are authentic and that Eckman signed them at the same time he completed his insurance application.

In addition, the Court does not find Eckman's testimony credible.  Eckman testified that he could not verify that the signatures on his insurance application or any of the PA Supplements were his.  (Hr'g Tr. at 11:4–14.)  As Encompass correctly points out, Eckman's verified complaint states that he signed his insurance application.  (Doc. No. 1-1 at ¶ 31.)  And, although Eckman does not recognize the PA Supplements, he does not recognize or recall signing *any* specific documents when he obtained his Encompass policy.  (Hr'g Tr. at 15:4–15.)  Eckman admits that he has no reason to believe that his signature was forged and offers no proof of forgery.[9]  (Eckman Dep. Tr. at 29:21–30:6.)  Finally, the Court finds all of the signatures appear

---

[7] The UM sign-down is page 4, time stamped "02:57p." (Doc. No. 18-9 at p. 2.)  The Section 1791 Important Notice is pages 5 through 9, with pages 5 and 6 time stamped "02:57p" and pages 7 through 9, time stamped "02:58p." (Doc. No. 18-8 at pp. 2–6.)  And the UIM sign-down form is page 10, time stamped "02:58p." (Doc. No. 18-13 at p. 2.)

[8] Again, the fax line is identical with the date ("Jun 18 13"), time, fax name (Donald Blizzard), fax number ("4844727489"), and fax page numbers.  (Doc. No. 1-1 at pp. 273–74.)  The document, titled "Encompass RMBC Important Agency Action Needed," appears to have been received as a fax on June 17, 2013 and then sent out on June 18, 2013, as page 1 from Blizzard's fax machine.  Page 1 is time stamped "02:56p." (*Id.* at p. 273.)  The document related to Eckman's prior Travelers insurance coverage is marked as page 2, time stamped "02:57p." (*Id.* at p. 274.)

[9] At oral argument, Eckman's counsel tacitly acknowledged that Eckman had no evidence that his signatures were forged on the PA Supplements.  (Hr'g Tr. at 33:4–34:5.)  Instead, he argued that Encompass had not offered sufficient proof that Eckman signed the forms.  (*Id.* at 33:12–20.)  But as Encompass correctly points out (Doc. No. 18 at pp. 9–11), "an insurer is not required to launch an investigation every time it receives a UIM rejection form bearing the apparent signature of the first named insured, purporting to waive coverage." *Toth v. Donegal Cos.*, 964 A.2d 413, 419–20 (Pa. Super. Ct. 2009).  Instead, the burden is on Eckman to prove that forms bearing his name and apparent signature are

similar and the handwritten date on the PA Supplements (June 13, 2013) matches the date of Eckman's insurance application and is written in the same handwriting.  (*Compare* Doc. No. 18-13 at p. 2, *with* Doc. No. 18-5 at p. 5.)  Therefore, after assessing van Duys's and Eckman's credibility and reviewing all of these circumstances, the Court finds the duplicates do not lack trustworthiness and thus there is no genuine issue as to authenticity of any of the PA Supplements.

Nor would it be unfair to admit the duplicates.  Although the UIM sign-down form was produced late, Encompass provided it to Eckman within the time period allotted for discovery,[10] and a month before the parties' summary judgment deadline.  Eckman had the opportunity to cross-examine van Duys about the form and about the circumstances under which it was located (which Eckman's counsel witnessed in real time).  There is no basis to find that Eckman has been prejudiced by the late production of this form.  *See, e.g.*, *Sheet Metal Workers' Ass'n Local 19 v. J.S. Mech. Contractors, Inc.*, 973 F. Supp. 516, 522 n.5 (E.D. Pa. 1997) (party opposing admission has burden of establishing unfairness); *United States v. Fleming*, 818 F. Supp. 845, 850 (E.D. Pa. 1993) (same).

---

forgeries.  *Jackson v. Allstate Ins. Co.*, 441 F. Supp. 2d 728, 732–33 (E.D. Pa. 2006).  An insured may not satisfy this burden by merely alleging that a document is a forgery and testifying that he or she does not recall signing a form.  *Id.* at 734–35.  Here, as in *Jackson*, Eckman offers no evidence tending to support the notion that the signatures on the PA Supplements were forged or fraudulently filled out other than he claims the signatures do not look like his signature and he does not recall signing them.  Indeed, given Eckman's counsel's refusal at oral argument to say directly that the PA Supplements produced by Encompass were fraudulent (Hr'g Tr. at 33:4–34:5), the case for forgery is even weaker here than it was in *Jackson*, as it lacks the *Jackson* insured's "bald allegation of forgery."  *Jackson*, 441 F. Supp. 2d at 734.

[10] Fact discovery did not close in this matter until December 13, 2019.  (Doc. No. 10.)

2.      *Best Evidence Rule*

Under the Best Evidence Rule, Federal Rule of Evidence 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless the[] rules or a federal statute provides otherwise."  However, Federal Rule of Evidence 1004 eliminates this requirement where, as relevant to this matter, "all the originals are lost or destroyed, and not by the proponent acting in bad faith."  The advisory committee notes to Rule 1004 state, "if failure to produce the original is satisfactorily explained, secondary evidence is admissible."  Fed. R. Evid. 1004 advisory committee's note on proposed rule.

As an initial matter, the Court notes that despite Eckman's arguments to the contrary (*see* Hr'g Tr. at 43:1–11), Encompass is not required to provide affirmative proof that the original document was lost or destroyed, *see United States v. Ortiz*, Criminal Action No. 11-251-08, 2013 WL 101727, at *3 (E.D. Pa. Jan. 7, 2013).  Encompass's counsel has certified that, despite a diligent search, Encompass has been unable to locate the original.  (*See* Doc. No. 18-12 at pp. 2– 3.)  It is hornbook law that if a document cannot be found, it is "lost" within the meaning of Rule 1004(a).  2 MCCORMICK ON EVIDENCE § 237 (8th ed. 2020).  The question, therefore, is whether the PA Supplements were lost due to Encompass's bad faith.

Encompass bears the burden of proving "that the originals were not lost or destroyed in bad faith," and this burden can be met by presenting "circumstantial evidence such as evidence of a diligent but unsuccessful search for the document."  *Ortiz*, 2013 WL 101727, at *3 (quoting *Stocchi v. Kmart Corp.*, No. 96-cv-4884, 1997 WL 611619, at *1 (E.D. Pa. Sept. 24, 1997)).  Encompass has met this burden.

Eckman's PA Supplements were executed in June 2013, and as van Duys testified, Encompass's "normal process" was to have the individual insurance agents retain the relevant

documents.  (van Duys Dep. Tr. at 9:2–6.)  However, at some point, Encompass changed course and asked Pennsylvania agents to send the originals to Encompass, where they would then be scanned and kept in a central database.  (*Id.* at 9:13–10:5; *see also* Doc. No. 18-12 at p. 2.)  Once the documents were scanned into the database, Encompass sent the originals to a warehouse in Connecticut.  (Doc. No. 18-12 at p. 2.)

Here, Eckman's PA Supplements were loaded on Encompass's database.  However, Eckman's insurance agent, Blizzard, and the insurance agency Blizzard worked for in 2013, no longer have the originals.  (*Id.* at pp. 2–3.)  And now, almost eight years later, Encompass could not locate the originals in its Connecticut warehouse.  (*Id.* at p. 3.)  Based on these facts, the Court concludes that, at most, Encompass has been negligent in its document retention process, but negligence is insufficient to establish bad faith.  *Ortiz*, 2013 WL 101727, at *4 (citing *Stocchi*, 1997 WL 611619, at *1).

Encompass has met its burden of authenticating the PA Supplements.  There is no indication that the copies are inauthentic or that admitting them would unfairly prejudice Eckman.  Encompass did not lose or destroy the originals in bad faith.  For these reasons, the Court finds that the copies of Eckman's PA Supplements are admissible and denies Eckman's motion to preclude.

## IV.   *Conclusion*

For the foregoing reasons, Eckman's Motion to Preclude is denied.

An appropriate Order follows.