# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTIAN ECKMAN,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-4038-KSM** |
| **ENCOMPASS HOME AND AUTO INSURANCE CO.,** | |
| Defendant. | |

## <u>MEMORANDUM</u>

**MARSTON, J.**                                                              **July 30, 2021**

Plaintiff Christian Eckman, individually and as executor of his deceased wife's estate, asserts a claim for a declaratory judgment against his insurer, Defendant Encompass Home and Auto Insurance Company ("Encompass"). (Doc. No. 1-1.) Eckman's claim stems from injuries sustained in a February 16, 2019 automobile accident that tragically resulted in the death of his wife, Deanna Marie Eckman. (*Id.* at ¶¶ 12–18.) Eckman seeks a declaratory judgment that he is entitled to receive underinsured motorists coverage ("UIM")[1] benefits in an amount equal to the bodily injury coverage benefits he received under his policy. (*Id.* at ¶ 70.)

In Pennsylvania, basic UIM coverage is for an amount equal to the policy's bodily injury limits. 75 Pa. Cons. Stat. § 1731. However, pursuant to section 1734 of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), an insured may request "in writing" for a

---

[1] "UIM coverage is triggered when a third-party tortfeasor injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." *Gallagher v. GEICO Indem. Co.,* 201 A.3d 131, 132 n.1 (Pa. 2019).

lower amount of UIM coverage.[2]  *Id.* § 1734.  To effectuate such a request, insurance companies use the Pennsylvania Auto Supplements (the "PA Supplements"),[3] which include the Section 1791 Important Notice and UM and UIM coverage selection/rejection forms (sometimes referred to as "sign-down forms" in the Pennsylvania insurance industry (*see* Doc. No. 1-1 at p. 280)).

During discovery in this case, Encompass produced copies of the Section 1791 Important Notice, and the UM and UIM sign-down forms, all of which Eckman had signed and executed in June 2013 when he first applied for his insurance policy.  (*See* Doc. Nos. 18-8, 18-9, & 18-13.) Eckman filed a motion to preclude these documents from evidence (Doc. No. 17), which this Court denied by a separate Memorandum issued today.

Eckman and Encompass have filed cross-motions for summary judgment.  (Doc. Nos. 19, 20.)  The Court must now determine whether Eckman is entitled to UIM benefits in an amount equal to the policy's bodily injury limits, given that he signed his insurance application and UIM sign-down form, both requesting a lower amount for UIM coverage.  For the reasons that follow, the Court grants Encompass's motion for summary judgment and denies Eckman's cross-motion.

## I.    *Procedural History*

On August 8, 2019, Eckman filed this declaratory action in state court (Doc. No. 1-1), and Encompass removed the matter to this Court on August 30, 2019 (Doc. No. 1).[4]  On

---

[2] The MVFRL also has provisions governing the availability and selection/rejection of uninsured motorist ("UM") benefits.  *E.g.*, *id.* § 1731.  "UM coverage applies when an insured suffers injury or damage caused by a third-party tortfeasor who is uninsured."  *Gallagher*, 201 A.3d at 132 n.1.  UM benefits are not at issue in this case.

[3] Encompass uses the following PA Supplements:  a four-page Section 1791 Important Notice, ACORD 61 PA Form; an UM coverage selection/rejection, ACORD 60 PA Form; and an UIM coverage selection/rejection, ACORD 62 PA Form.  (Doc. Nos. 18-8, 18-9, & 18-13, respectively.)

[4] This case was originally assigned to the Honorable Timothy J. Savage.  The matter was reassigned to the Honorable Karen Spencer Marston on February 26, 2020.  (Doc. No. 23.)

November 22, 2019, during discovery, Encompass produced copies of Eckman's executed Section 1791 Important Notice and UM sign-down form.  (Doc. Nos. 18-8 & 18-9.)  Then, on December 4, 2019, during the deposition of Encompass's corporate designee, William van Duys, van Duys located and produced the executed copy of Eckman's UIM sign-down form.  (Doc. No. 18-13; van Duys Dep. Tr. at 42:22–43:20.)  Eckman filed a motion to preclude this evidence (Doc. No. 17), which the Court denied.

On January 10, 2020, the parties filed cross-motions for summary judgment; and two weeks later they filed cross-responses.  (Doc. Nos. 19–22.)  Eckman argues that he is entitled to summary judgment because he did not request in writing UIM coverage for an amount less than the limits of liability for bodily injury, as required by the MVFRL.  (Doc. No. 20.)  In contrast, Encompass asserts that it is entitled to summary judgment because Eckman properly requested in writing the lower UIM coverage.  (Doc. No. 19.)

The Court ordered the parties to file supplemental briefing regarding the Third Circuit's April 2021 ruling in *Gibson v. State Farm Mutual Automobile Insurance Co.*, 994 F.3d 182 (3d Cir. 2021).  (Doc. No. 33.)  In his supplemental brief, Eckman argues that *Gibson* is factually distinguishable from this case and supports his summary judgment motion.  (Doc. No. 35.)  Encompass disagrees and argues that *Gibson* mandates summary judgment in its favor.  (Doc. No. 34.)

The Court held oral argument on June 22, 2021.  Eckman testified on his own behalf for his motion for summary judgment.  During oral argument, Eckman conceded that if the Court denies his motion to preclude and holds that the PA Supplements are admissible, then Encompass is entitled to summary judgment.  (Hr'g Tr. at 38:7–17.)

3

## II.    Factual Background

### A.    The Accident

On the evening of February 16, 2019, an inebriated motorist driving 78 miles-per-hour and in the wrong lane struck head-on the vehicle Eckman and his wife, Deana Marie Eckman, were driving.  (Doc. No. 1-1 at ¶ 12.)  Tragically, Mrs. Eckman was fatally injured and Eckman was seriously injured.  (*Id.* at ¶¶ 16–18.)

At the time of the accident, the Eckmans had an auto insurance policy with Encompass, which they originally obtained in June 2013.  (*Id.*)  There is no dispute that Eckman is eligible to receive UIM benefits.  The only issue is the limit of coverage.

### B.    The Insurance Policy

In June 2013, the Eckmans applied for an Encompass automobile insurance policy through their insurance agent, Donald Blizzard, who is also Eckman's brother-in-law.  (*See* Doc. No. 18-5 at p. 5; Eckman Dep. Tr. at 18:14–20:19.)  Blizzard or someone in his office filled out the Encompass application for Eckman, and Eckman then went to the office to sign the documents.  (Eckman Dep. Tr. at 22:1–23.)  Once Eckman arrived at Blizzard's office, all he did was sign the paperwork.  (*Id.*)  He did not review the documents before signing them, and now eight years later, he does not recall any of the specific documents he signed.  (*Id.* at 22:24–23:2; Hr'g Tr. at 15:4–15.)

The insurance policy provides bodily injury liability coverage of $250,000 per person and $500,000 per accident, as well as UM and UIM coverage of $100,000 per person and $300,000 per accident.  (Doc. No. 22-12 at p. 2.)  The insurance policy also provides for "stacked" coverage.[5]  (*Id.*)

---

[5] "'Stacking' refers to the practice of combining the insurance coverage of individual vehicles to increase

4

Eckman's application includes the following disclaimers just above Eckman's signature:

> I have read the above application and any attachments.  I declare that the information provided in them is true, complete and correct to the best of my knowledge and belief.
>
> . . .
>
> I understand that the coverage selection and limit choices indicated here or in any state supplement will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing.

(*Id.* at p. 5.)

Eckman's UIM sign-down form contains the following information:

> Underinsured Motorists coverage is optional coverage.  However, we are required to include it in your policy unless you take steps to reject it.
>
> Underinsured motorists protection is insurance coverage you carry in your own policy that protects only you and your family, and any other person while occupying an insured auto, if you are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims and whose policy limits are less than your underinsured motorists coverage limits.
>
> . . .
>
> You have the option of purchasing underinsured motorists coverage up to the limits of your bodily injury coverage.  You also have the option of purchasing lower limits.

---

the amount of total coverage available to an insured." *Gallagher,* 201 A.3d at 132 n.1.  "To give a stylized example of how stacking works, imagine an insured with two insurance policies.  The first covered her family's two automobiles and provided $10,000 in underinsured motorist coverage per vehicle.  The second covered the insured's motorcycle and provided $5,000 in underinsured motorist coverage for her bike.  If the insured elected to 'stack' her coverage, then she could recover a total of $25,000 in underinsured motorist coverage for an accident involving any of the vehicles—$20,000 in coverage from the first policy (intra-policy stacking) plus the $5,000 from the second (inter-policy stacking)." *Stockdale v. Allstate Fire & Cas. Co.*, Civil Action No. 19-845, 2020 WL 953284, at *1 n.4 (E.D. Pa. Feb. 27, 2020).  Here, the parties agree the policy is stacked.

> The underinsured motorists coverage limits I select are:
> <u>$100000/300000</u>
>
> (Please also show these limits on the application.)

(*Id.* at p. 18.)  Eckman's signature and a handwritten date (June 13, 2013) appear immediately

below this final instruction, both of which match the date and handwriting on his insurance

application.  (*Compare id.*, *with id.* at p. 5.)

Encompass issued the automobile insurance policy in June of 2013; the policy was

subsequently renewed and amended to add and remove vehicles.  (*See* Doc. No. 1-1 at ¶ 42; Doc.

No. 19 at p. 8.)  No removals or amendments changed the liability amounts requested on

Eckman's original application.  (Doc. No. 1-1 at ¶ 42; Doc. No. 19 at p. 8.)  At the time of the

fatal crash, the policy covered Eckman's four vehicles.  (*See* Doc. No. 19-47 at pp. 6–9.)

## III.    *Legal Standard*

Summary judgment is appropriate when the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  A factual dispute is "genuine" within the meaning of Rule 56 if "a

reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  Disputes over facts are material if the facts at issue "might affect

the outcome of the suit under the governing law."  *Id.*

When confronted with cross-motions for summary judgment, the "court must rule on

each party's motion on an individual and separate basis, determining, for each side, whether a

judgment may be entered in accordance with the Rule 56 standard."  *Freeth v. Zurich Am. Ins.*

*Co.*, 152 F. Supp. 3d 420, 425 (E.D. Pa. 2015) (quoting *Schlegel v. Life Ins. Co. of N. Am.*, 269

F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003)).  Here, the parties dispute whether Eckman requested

6

in writing lower coverage for UIM benefits pursuant to the requirements of the MVFRL, which presents a pure question of law for the Court.

## IV.    *Discussion*

Eckman concedes that if the Court finds Eckman's PA Supplements admissible, then Encompass is entitled to summary judgment.  (Hr'g Tr. at 38:7–17.)  Thus, given the Court's ruling that Eckman's PA Supplements are admissible, the Court grants Encompass's motion for summary judgment and denies Eckman's motion for summary judgment.  In the alternative, the Court finds that even if it were to preclude Eckman's PA Supplements, Encompass would still be entitled to summary judgment.

"Underinsured motor vehicle coverage ('UIM') is designed to help defray the cost of an accident with an uninsured or underinsured motorist."  *Gibson*, 994 F.3d at 184.  Pennsylvania law requires insurance companies to offer insureds UIM coverage equal to the bodily injury limits set in the policy, unless the insured makes a "request in writing" for lower UIM coverage or elects to waive such coverage completely.[6]  75 Pa. Cons. Stat. §§ 1731, 1734.  As the Third Circuit noted in *Gibson*, Section 1734 "means what it says: an insured can make [the choice to select lower UIM coverage] 'in writing' in any writing as long as the choice is clear."  994 F.3d

---

[6] Eckman argues that he should be granted summary judgment in part because he was never offered UIM coverage equal to his liability coverage, as he says is required by the MVFRL.  (*See* Doc. No. 20-2 at p. 2; *see also* Hr'g Tr. at 55:20–56:2, 56:10–25.)  This argument fails for three reasons.  First, Eckman's argument is premised on the assumption that the UIM sign-down form is inadmissible (*see* Doc. No. 20-2 at p. 2), but for reasons discussed in this Court's Memorandum on Eckman's motion to preclude, the UIM sign-down form is admissible.  Second, while it is true that "§ 1731(a) requires that UM/UIM coverage must be offered in the amounts provided in § 1734," there is "no support in the text of the MVFRL" that an insurance company must "offer in writing an insurance policy with bodily injury limits and UM/UIM coverage set at the same amount in the first instance, and then, the insured must request the lower UIM limit in writing."  *Gibson*, 994 F.3d at 188.  Third, Section 1791 of the MVFRL provides that, as long as an insured receives the notice described in that section, "[i]t shall be presumed that the insured has been advised of the benefits and limits available under [the MVFRL]."  75 Pa. Cons. Stat. § 1791.  Because Eckman was provided with and signed the Section 1791 Important Notice provided by Encompass when he applied for his policy (*see* Doc. No. 18-8), the statutory presumption applies and Eckman is presumed to have been offered UIM coverage equal to his liability coverage.

at 184.  Similarly, the Pennsylvania Superior Court has explained that a written request for lower UM/UIM coverage is valid under Section 1734 if it "(1) manifest[s] the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits; (2) [is] signed by the named insured; and (3) include[s] an express designation of the amount of uninsured and underinsured coverage requested." *Weilacher v. State Farm Mut. Auto. Ins. Co.*, 65 A.3d 976, 983 (Pa. Super. Ct. 2013) (quoting *Nationwide Mut. Ins. Co. v. Catalini*, 18 A.3d 1206, 1209 (Pa. Super. Ct. 2011)).

The Supreme Court of Pennsylvania has explained that insurance applications alone can satisfy this requirement.  *Orsag v. Farmers New Century Ins.*, 15 A.3d 896, 901 (Pa. 2011). *Orsag* involved an insured who filled out a pre-printed, two-page insurance application with hand-written coverage amounts,[7] requesting $100,000 in bodily injury liability coverage and $15,000 in UM/UIM coverage.  *Id.* at 897.  When he was injured in a car crash with an underinsured motorist, the insured sued his insurance company, arguing that under the MVFRL, he was owed $100,000 in UIM coverage because his insurance application did not constitute a "writing" within the meaning of Section 1734.  *Id.* at 899.

The Supreme Court of Pennsylvania disagreed.  It held that "the language of § 1734 is plain and unambiguous."  *Id.* at 901.  "Clearly, the most effective manner in which to 'expressly designate' the amount of coverage requested is by electing a specific dollar amount on an insurance application."  *Id.*  For this reason, the court explained that while "it is laudable" for insurance companies to provide [insureds] additional information regarding UM/UIM insurance

---

[7] It is unclear who actually hand-wrote the desired coverage amounts in *Orsag*.  *See id.* at 897 ("The application was mostly pre-printed, but contained blank spaces where requested information was filled in by hand.  The requested information included . . . coverage amounts . . . .  In the section devoted to coverage selections, appellant requested bodily injury liability coverage of $100,000 per person and uninsured/underinsured motorist (UM/UIM) coverage of $15,000 each for two vehicles.").

beyond what is found in the application," there is no statutory basis for "requiring a separate statement when it is clear from the coverage selected that the insured intended reduced UM/UIM coverage." *Id.* at 902.

Despite the relatively clear principles explained in *Orsag*, courts in the Third Circuit, relying primarily on pre-*Orsag* caselaw, continued to find that insurance applications alone could not serve as a "writing" sufficient to select lower UM/UIM coverage. *See Gibson v. State Farm Fire & Cas. Co.*, Civil Action No. 12-4919, 2020 WL 814977, at *3–4 (E.D. Pa. Feb. 18, 2020); *Freeth*, 152 F. Supp. 3d at 429, *aff'd*, 645 F. App'x 169, 172–73 (3d Cir. 2016). Eckman relies on *Freeth* and some pre-*Orsag* cases in arguing that he did not adequately elect lower UIM coverage. (*See* Doc. No. 20-2 at pp. 8–9.)

Even before the Third Circuit's decision in *Gibson*, the Court would have been skeptical of Eckman's reliance on *Freeth* and pre-*Orsag* cases. This is because, even in affirming *Freeth*, the Third Circuit made clear that its conclusion did not rest on the insured's "contention that Pennsylvania law requires insureds to perform an 'affirmative act' of writing beyond signing a preprinted document (such as hand writing the desired dollar amount of coverage, or placing checkmarks or initials immediately beside the dollar amounts) in order to manifest their intent to reduce UM coverage." *Freeth*, 645 F. App'x at 172. Similarly, in *Farmland Mutual Insurance Company v. Sechrist*, the Third Circuit questioned the continuing legitimacy of *Erie Insurance Exchange v. Larrimore*—a pre-*Orsag* case in which the Pennsylvania Superior Court held that an insurance company that used state supplement forms was tacitly admitting that its insurance application alone did not meet the Section 1734 requirements—in light of the Supreme Court of Pennsylvania's decision in *Orsag*. 769 F. App'x 66, 71 (3d Cir. 2019); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, Case No. 5:19-cv-03001-JDW, 2020 WL 1701692, at *4 (E.D. Pa.

Apr. 8, 2020) ("In *Farmland*, the Third Circuit noted the tension between the decisions in *Larrimore* and *Orsag*. . . . The Court will follow *Orsag* as both later and a decision of Pennsylvania's Supreme Court." (citation omitted)).

The Third Circuit's recent ruling in *Gibson* eliminates any remaining hesitation this Court may have had as to the controlling law.  In *Gibson*, the insured signed an insurance application which indicated that she had selected lower UIM coverage, but which did not include additional documents which the application designated as "required," including a UIM sign-down form acknowledging the lowered UIM coverage.[8]  994 F.3d at 185.  At issue was whether the insurance application constituted a "writing" within the meaning of Section 1734, such that the insured had validly agreed to lower UIM coverage.  *Id.* at 186.  The Third Circuit ruled that the insurance application alone was sufficient and that the insured had agreed to lower UIM coverage.  *Id.* at 188.  The Third Circuit explained that "[a]bsent a statutory provision requiring an insurer to provide an additional form or certain magic words," it would not find that anything more than the insured's application was necessary to serve as the insured's "request in writing" for lower UIM coverage.  *Id.*

The same principles govern here and mandate a finding that Eckman's insurance application was a sufficient "request in writing" for lower UIM coverage under Section 1734. The application meets all of the requirements for such a request and is in line with the law set forth by the Pennsylvania courts and the Third Circuit.  Specifically, the application indicates Eckman's intent to purchase UIM coverage below the bodily injury limit, includes an express designation of the UIM coverage requested, and contains Eckman's signature.  *See Weilacher*, 65 A.3d at 983.  (*See* Doc. No. 22-12 at pp. 2, 5.)  It is uncontested that Eckman signed the

---

[8] The last page of insured's application referenced certain "required" documents which were not signed until after the insured's accident.  *Id.* at 184.

application.  (*E.g.*, Doc. No. 1-1 at ¶ 31.)  The application indicates that Eckman desired lower

UIM coverage than bodily injury liability coverage because it includes both coverage amounts—

UIM coverage at a rate of $100,000 per person and $300,000 per accident, and bodily injury

coverage of $250,000 per person and $500,000 per accident.  (Doc. No. 22-12 at p. 2.)

Moreover, by signing the application Eckman indicated that he had read it and that "the

information provided . . . [was] true, complete and correct to the best of [his] knowledge and

belief."[9]  (*Id.*)

Finally, while Eckman's intention to select lower UIM coverage would have been clearer

if the coverage amounts on his insurance application were handwritten, as in *Orsag*, *see Orsag*,

15 A.3d at 901 n.3, Eckman's signature on the application, without anything more, is sufficient

to signal his intent, *see id.* (noting that the handwritten coverage amounts were "not

dispositive"); *see also State Farm Mut. Auto Ins. Co. v. Hughes*, 438 F. Supp. 2d 526, 535–37

(E.D. Pa. 2006) (finding that there was "no legal significance" to the fact that the insurance agent

hand-wrote the coverage amounts on the insurance application, because the insured

"acknowledged by her signature that she had 'read this application' and that 'the statements

hereon . . . are correct'"); *cf. Henderson v. Charter Oak Fire Ins.*, 615 F. App'x 109, 111 (3d Cir.

2015) (finding that an insurance application on which the insured had marked boxes indicating

UIM coverage amounts and which the insured had signed satisfied Section 1734's writing

---

[9] Eckman seeks to distinguish *Orsag*, *Gibson*, and other cases finding that an insurance application alone
can serve as a request in writing for lower UIM coverage under Section 1734 by arguing that the
disclaimers at issue in those cases were different than the disclaimer in Eckman's insurance application.
(*E.g.*, Hr'g Tr. at 57:1–11.)  Although the disclaimer language on Eckman's application is slightly
different (*compare* Doc. No. 22-12 at p. 5, *with Orsag*, 15 A.3d at 897, *and Gibson*, 994 F.3d at 188), it is
a distinction without a difference.  The disclaimer in Eckman's application makes clear that he has "read
the . . . application," that the information provided in it "is true, complete and accurate," and that he
acknowledges that his "coverage selection and limit choices" will continue to bind him in the future.
(Doc. No. 22-12 at p. 5.)  This is sufficient to show that the application reflects Eckman's desire to
receive lower UIM coverage.

requirement).  In other words, Eckman was not required to fill out the application himself—other than signing it—for it to qualify as a request in writing for UIM coverage lower than bodily injury coverage within the meaning of Section 1734.

Eckman's signed insurance application indicates his intent to request UIM coverage lower than his requested bodily injury liability coverage, and included the specific amount of UIM coverage that he was requesting—all that is needed to satisfy the requirements of the MVFRL.  For these reasons, even if Eckman's PA Supplements were inadmissible, Encompass is entitled to summary judgment.

## V.    *Conclusion*

For these reasons, Encompass's motion for summary judgment is granted, and Eckman's motion for summary judgment is denied.

An appropriate Order follows.